UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BARBARA MITCHELL,

          Plaintiff,

                                            Case No. 4:05-CV-57

v.

                                            Hon. Richard Alan Enslen

CITY OF KALAMAZOO and
COUNTY OF KALAMAZOO,

                                            __OPINION__

          Defendants.

_____/

      This matter is before the Court on Defendant County of Kalamazoo's Second Motion for

Summary Judgment and Plaintiff Barbara Mitchell's competing Motion for Summary Judgment

pursuant to Federal Rule of Civil Procedure 56(b).  Also before the Court is Defendant City of

Kalamazoo's Amended Motion for Summary Judgment.  The Motions have been fully briefed and

the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

## I.      BACKGROUND

      In 2003, Plaintiff injured her back while gardening.  She sought treatment, and was diagnosed

with degenerative disc disease and bulging discs in her back.  While receiving physical therapy,

Plaintiff requested her health care provider submit an application on her behalf for a handicapped

parking permit.  Plaintiff wanted the permit because she occasionally had back spasms when she

walked and she was fearful of slipping on ice and further injuring her back.  Plaintiff was approved

for a handicapped parking permit by the State of Michigan.

      In June 2004, Plaintiff completed a juror questionnaire and failed to answer the question of

whether she was physically and/or mentally able to carry out the functions of a juror.  In response

to the question of whether there were any special physical accommodations the Court needed to provide, Plaintiff answered that she was limited in how much she could walk due to a back injury which also necessitated her use of an electronic stimulation device. Thereafter, Plaintiff received a summons compelling her to attend the Kalamazoo County Circuit Court ("courthouse") on November 16, 2004, for jury duty. The summons directed her to park in the parking structure at Rose and Water Streets ("parking structure") and did not indicate anything about handicapped or disabled parking. Plaintiff was also directed to call a phone number the night before jury duty to confirm that her service would still be needed. The call-in system notified jurors of whether they needed to come to the courthouse. The system also played a message which instructed jurors to contact the jury coordinator if they needed handicapped parking. Plaintiff does not recall if she stayed on the line to hear that message.

Defendant County of Kalamazoo had an arrangement with the parking enforcement company, Central City Parking ("Central City"), that any handicapped juror could use the metered spots around the courthouse, not feed the meter and not be ticketed. The jury coordinator for the courthouse would receive the pertinent car information from those jurors who needed disabled parking and notify Central City. Central City would, in turn, not ticket those particular cars and bill those jurors the same parking rate charged in the parking structure.

Plaintiff drove to the courthouse for jury duty, and states she could not find any open handicapped or meter parking spaces near the courthouse. Plaintiff eventually parked in the structure on Rose and Water streets and walked to the courthouse. During her walk out of the structure,

2

Plaintiff spontaneously hyper-extended her knee.[1]  Upon her arrival to the courthouse, she expressed her anger over the parking situation for handicapped individuals and her intent to sue.  The jury coordinator at the time instructed her of the arrangement which would allow her to park in the metered parking around the courthouse for the same fee, and Plaintiff took advantage of this arrangement when she parked her car again after lunch.

Plaintiff was not selected for jury duty on that date; however, she claims she would have been unable to serve because of her knee injury even if she had been selected.  Plaintiff then filed this lawsuit.

## II.    LEGAL STANDARDS

Under the language of Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish

---

[1]Plaintiff had surgery in January 2005 to repair the damage to her knee, which she claims includes a "probable anterior cruciate ligament tear and a complex tear of the posterior horn, medical meniscus ligament." (Pl.'s Br. 8.)

the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004); *Graham-Humphreys v. Memphis Brooks Museum of Art Inc.*, 209 F.3d 552, 557 n.7 (6th Cir. 2000); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (*quoting Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); however, Rule 56 limits the materials the Court may consider in deciding a motion under the rule to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*quoting* Fed. R. Civ. P. 56(c)).

## III.  DISCUSSION

### A.  Plaintiff's ADA Claim

Defendants contend that Plaintiff fails to make a *prima facie* case under Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*, and therefore her claims are subject to summary judgment. Plaintiff claims she is a qualified individual under the ADA and was denied the benefit of jury service and discriminated against because of her disability and is entitled to summary judgment on this issue. To make a *prima facie* case under Title II of the ADA, the Plaintiff must establish that: "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to

4

discrimination under the program solely because of her disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005).

      1.    *Plaintiff's Disabled Status under ADA*

Title II of the ADA defines an 'otherwise qualified individual with a disability' as an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural...or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). To establish Plaintiff has a disability under the ADA, Plaintiff must show she has a physical or mental impairment that substantially limits one or more of her major life activities. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630(g)(1), (2). A 'major life activity' is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

Plaintiff claims her ability to walk is substantially limited and therefore, she is disabled under the ADA. It is undisputed that in 2003, Plaintiff sought medical attention after injuring her back gardening and was diagnosed with degenerative disc disease. (Green Dep. 12.) Plaintiff then underwent a "conservative treatment" regimen which included medication and physical therapy. (Pl.'s Dep. 79-80.) Despite degenerative disc disease being a permanent condition, by all accounts the treatment had its desired effect. Plaintiff was discharged from physical therapy in May 2004[2]

---

[2]Plaintiff's Affidavit states she suffered painful exacerbations of her back after her physical therapy ceased. This claim is contradicted by her deposition where she stated that her condition had improved, and she only went to Mr. Green for routine follow-up appointments. The Sixth Circuit has held that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (1986).

with normal range of motion in her back and at that time, she rated her average pain level at a 1.5 on a scale of 10.[3]  (Green Dep. 24.11-24.22.)  Further, the physical therapy records indicate Plaintiff was able to walk the equivalent of one-half mile without stopping to rest.[4]  Plaintiff states that between the time Mr. Green filled out the application for her handicapped permit and November 2004, her condition had improved.  (Pl.'s Dep. 73-74.)  Indeed, Plaintiff states she only had routine appointments with Mr. Green after her discharge from physical therapy.  (Pl.'s Dep. 82.11.)

The ADA provides that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2).  Here, the evidence is almost completely uncontradicted that Plaintiff's condition in November 2004 was consistent with or improved from her physical status in May 2004.[5]  *See Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001) (generally, plaintiff must establish a disability at the time of the discriminatory acts to have standing to recover under the ADA); *see also Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876 (6th Cir. 1996).  The evidence presented shows that as of May 2004, Plaintiff had a normal range of motion, her condition had improved, she could walk for one-half mile without

---

[3]As indicated in the physical therapy notes, Plaintiff's worst pain complained of was rated four on a scale of ten.

[4]The distance between Rose Street parking structure and the public entrance to the courthouse was estimated at 649 feet by David McCaffery, Director of Buildings and Grounds for the County of Kalamazoo. (McCaffery Aff. ¶ 2.)

[5]Mr. Green did state Plaintiff came to his office for what is described in his notes as an "exacerbation" of her back pain on September 2, 2004.  (Green Dep. 20-27, 58-59.)  However, Mr. Green explained the fact that he did not send her back to physical therapy indicated her condition was at least as good as it was at the time of discharge in May 2004.  (*Id.*)

6

rest, and her pain was 1.5 on a scale of 10.  Although degenerative disc disease is permanent, the nature and severity of her condition in November 2004, taken in a light most favorable to Plaintiff, does not rise to the level of a disability under the ADA.  *See Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) ("We have found few cases defining what constitutes a substantial limitation on a person's ability to walk . . . [w]hat cases do exist, though, make clear that moderate difficulty or pain experienced while walking does not rise to the level of a disability.") (internal citations omitted); *see also Sutton v. United Airlines*, 527 U.S. 471, 483 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.")

Therefore, because Plaintiff fails to meet the first prong of a *prima facie* case under the ADA, Defendants are entitled to summary judgment as to that claim.  However, even assuming *arguendo* there was a genuine issue of material fact as to Plaintiff's disabled status, Plaintiff's ADA claim fails because Plaintiff has not established that she was discriminated against solely because of her disability.  The Court addresses this issue below.

2.      *Discriminated based on disability.*

Defendant County of Kalamazoo argues Plaintiff has failed to establish a *prima facie* case under the ADA because she has not shown she was discriminated against *solely* because of her disability.  Plaintiff never specifically rebuts or addresses this claim.  The Sixth Circuit has held that the third element of a *prima facie* case under the ADA requires Plaintiff to show she was excluded from participation in, denied the benefits of, or subjected to discrimination *solely* because of her disability.  *See Dillery*, 398 F.3d at 567 (emphasis added); *see also Sandison v. Mich. High Sch. Athletic Ass'n Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995).

Plaintiff argues she was denied the benefit of jury duty because although she attended, she had greater difficulty in doing so due to the lack of handicapped parking spaces.  Plaintiff further argues she was discriminated against because there was no disabled parking available.  These arguments do not provide any genuine issue of material fact regarding whether Plaintiff suffered discrimination or the denial of benefits for the *sole reason of her disability*.

In *Jones v. Monroe*, 341 F.3d 474 (6th Cir. 2003), the Sixth Circuit found Jones was not excluded from the parking benefits of the city in violation of the ADA when the one-hour and all-day parking scheme of a city was facially neutral.  *Id*.  The Sixth Circuit held that the "parking limitations do not affect disabled and nondisabled individuals differently in any respect...Plaintiff has equal access to the free downtown parking."  *Id*. at 478 (*citing Henrietta D. v. Bloomberg*, 331 F.3d 261, 276 (2nd Cir. 2003)).  In this case, Defendants directed *all prospective jurors* to park in the parking structure as there is no designated public parking for the courthouse.[6]  As in *Jones*, this parking arrangement is facially neutral.[7]  In *Jones*, the court held "both disabled and able-bodied persons may park in all-day parking . . . [t]he parking limitations do not affect disabled and nondisabled individuals differently in any respect."  *Id*. at 478.  Similarly, in the instant case, Plaintiff was provided the same access to parking that all other jurors were provided.  As the Second Circuit Court of Appeals has stated, where there is nothing "different about the way the plaintiff is

---

[6]There is also an arrangement in place where disabled persons could park in the metered parking around the Courthouse for the same fee of the parking structure.  This arrangement would actually put Plaintiff in a better position than the other non-disabled jurors. Plaintiff made use of this arrangement after returning from lunch.

[7]The Court notes Plaintiff's own statement in her deposition that she "doesn't have anything" that indicates juror parking in the parking structure was motivated by anything other than limited parking in the area.  (*See* Pl.'s Dep. 198.11-198.15.)

treated 'by reason of . . . disability'" there is no ADA violation. *Henrietta D.*, 331 F.2d at 276 (*quoting* 42 U.S.C. § 12132). There is no genuine issue of material fact to support a claim that Plaintiff was treated any differently than any other juror in November 2004, when she attended jury duty and was directed to park in the structure. Therefore, it is proper to grant summary judgment as to this issue and Plaintiff's ADA claim fails.

Further, assuming *arguendo* that genuine issues of material fact did exist as to whether Plaintiff qualified under the ADA, her claim would still fail because Defendant County of Kalamazoo did not violate the ADA by not providing disabled parking when it provided no public parking to the general public. The Court addresses this issue below.

### B.     ADA requirement to provide disabled parking

Plaintiff claims in her Motion for Summary Judgment that Defendants violated the ADA by not providing any disabled parking for visitors in the employee parking lot to the west of the courthouse.[8] Defendant County of Kalamazoo claims there was no ADA violation because it did not have any obligation to provide disabled parking to the general public in an employee only parking lot when it does not provide any general public parking. Defendant City of Kalamazoo similarly argues there was no ADA violation because Plaintiff was on equal footing with any other person attending the courthouse.

The Eleventh Circuit Court of Appeals addressed similar issues in *Kornblau v. Dade County*, 86 F.3d 193 (11th Cir. 1993). In *Kornblau*, the plaintiff brought a claim under the ADA against a county for failing to provide disabled parking in a lot designated for senior government officials.

---

[8]The Court interprets the 'lot' to include the contiguous parking lot and also the angled parking to the immediate east on Church Street.

*Id*. at 194.  Kornblau argued that pursuant to 28 C.F.R. Pt. 36, App. A § 4.6.2, the county was required to provide disabled parking on the shortest accessible route regardless of the fact that the lot was a private employee lot to which visitors had no access.[9]  *Id*.  However, the Eleventh Circuit held that 28 C.F.R. Pt. 36, App. A § 4.6.2  must be read in conjunction with the regulation that states "[i]f parking spaces are provided for self parking by employees or visitors or both then accessible spaces complying with 4.6 shall be provided in each such parking area in conformance with the table below."  *Id*. at 195, *quoting* 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(A).  As a result, the defendant in Kornblau had not violated the ADA when it did not provide visitor handicapped parking in a private employee's parking lot.

In this action, Plaintiff argues that pursuant to the above regulations, disabled parking should be available in a private employee lot next to the courthouse.[10]  Plaintiff distinguishes *Kornblau* by construing the parking lot west of the courthouse as a lot that does not qualify as an employees only lot.  Plaintiff contends because the parking lot has designated spaces for maintenance workers, delivery drivers, and law enforcement personnel who have business with the court, and not just employees of the courthouse, it is distinguishable from *Kornblau*.  Plaintiff vigorously argues that those parking spots are reserved for certain favored classes of visitors, and Defendants[11] cannot claim

---

[9]The regulation states in pertinent part: "where parking is provided for a public building, a certain number of spaces must be provided for the disabled, located on the shortest accessible route of travel to the entrance of the building . . ."  28 C.F.R. Pt. 36, App. A § 4.1.2.

[10]The Court notes that there are two disabled parking spaces in the lot, but they are designated for employees only.

[11]The Court refers to both Defendants throughout this section without reaching the issue of whether the Defendants were involved in a "joint venture" such that Defendant City of Kalamazoo would be liable for violations made by Defendant County of Kalamazoo's control of the parking lot.  It is unnecessary for the Court to reach this issue for the reason that Plaintiff's

it is an employee lot while allowing those non-employees to park there.   However, Plaintiff's argument is without merit.   In *Kornblau*, the Eleventh Circuit held Kornblau was seeking to "gain an advantage over non-disabled parkers through a confused interpretation of the Accessibility Guidelines . . ."   *Id.* at 194.   In the instant case, Plaintiff seeks the same.   Plaintiff desires access to a private parking lot which does not allow the general public access.   "[N]othing in the [ADA], its purpose, or the regulations can reasonably be read to give disabled parkers access to areas that would not be available to them it they were not disabled.   The purpose of the Act is to place those with disabilities on an equal footing, not to give them an unfair advantage."   *Id.*

Common sense dictates that the reservation of parking spaces for maintenance, law enforcement, county officials, and deliveries is not geared towards favoring arbitrary classes of people but rather are reserved for those groups of people who need quick access to the building to facilitate the court's operations.   Further, those spaces dedicated to law enforcement personnel are also important to the function and safety of the courthouse as those individuals are charged with bringing in evidence to the courthouse (including guns and contraband), time sensitive charging requests, and secure delivery of jailed and incarcerated persons including those in shackles.

As discussed previously, Defendants parking scheme was facially neutral and did not have a discriminatory effect since all jurors were treated the same.   *See Jones*, 341 F.3d at 478.   Moreover, the arrangement which allows disabled individuals to park in the metered parking spots around the courthouse for the same fee as those jurors who park in the structure is a reasonable modification for the disabled parking needs of the courthouse under 28 C.F.R. § 35.130(b)(7).   Therefore, taking all

---

ADA claims fail on summary judgment.

the facts in a light most favorable to Plaintiff, no genuine issue of material fact exists that the parking provided by Defendants violated the ADA and summary judgment is appropriate.[12]

### C.     Plaintiff's Claim under Mich. Comp. Laws § 37.1101

Defendants contend Plaintiff's claim under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") is subject to summary judgment. MICH. COMP. LAWS § 37.1101. Upon review, the Court agrees. Plaintiff claims a violation under § 37.1102, which provides in pertinent part, "The opportunity to obtain . . . equal utilization of public accommodation, [and] public services . . . without discrimination because of a disability is guaranteed by this act and is a civil right." MICH. COMP. LAWS § 37.1102(1).

"Michigan's PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs.*, 287 F.3d 593, 597 (6th Cir. 2002) (*quoting Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 n.3 (6th Cir. 1998). Here, where the Plaintiff has failed to successfully allege a disability under the ADA, failed to establish she was discriminated against solely because of her disability, and failed to establish Defendants violated the ADA by not providing disabled parking for the public in a private employee lot, Plaintiff's PWDCRA claim will also fail.

## IV. CONCLUSION

Therefore, the Court will grant Defendant County of Kalamazoo's Second Motion for Summary Judgment and Defendant City of Kalamazoo's Amended Motion for Summary Judgment. The Court will also deny Plaintiff's Motion for Summary Judgment.

---

[12] The Court will not address Plaintiff's argument of inadequate signs (in violation of 28 CRF Pt. 36, App. A, § 4.6.4) for the reason Plaintiff has not sustained the claim that ADA required public handicapped parking in this situation or that she has a disability under the ADA.

A Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:
October 26, 2006

/s/ Richard Alan Enslen
RICHARD ALAN ENSLEN
SENIOR UNITED STATES DISTRICT JUDGE